# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

**JANUARY SESSION, 1998**



**FILED**

April 20, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9702-CR-00068** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **DAVIDSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. THOMAS H. SHRIVER** |
| **SHAWN D. LESLEY,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Second Degree** |
| | ) | **Murder)** |

FOR THE APPELLANT:

F. MICHIE GIBSON, JR.
1416 Parkway Towers
404 James Robertson Parkway
Nashville, TN 37219

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

LISA A. NAYLOR
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

VICTOR S. JOHNSON
District Attorney General

JOHN ZIMMERMANN
Assistant District Attorney
222 2nd Avenue, No.
Nashville, TN 37201

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# <u>OPINION</u>

On November 15, 1995, a Davidson County jury convicted Appellant Shawn D. Lesley of second degree murder. On February 29, 1996, the trial court sentenced Appellant as a Range I standard offender to a term of twenty years. Appellant filed a motion for a new trial on March 28, 1996, and an amended motion for a new trial on September 6, 1996. The trial court denied the motion for a new trial on October 4, 1996. Appellant challenges his conviction, raising the following issues:

> 1) whether the trial court erred when it allowed the State to introduce photographs of the victim's hands into evidence; and
> 2) whether the trial court erred when it allowed a witness for the State to testify about Appellant's demeanor at the time that Appellant took the victim to the hospital.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Steven Cernawsky testified that he was working as a nurse in the emergency room of Metro General Hospital on March 23, 1993, when Appellant entered the hospital carrying fifteen-month-old Laura Waters. When Appellant handed him the child, Cernawsky noticed that she was not breathing and he immediately attempted to resuscitate her. Although Cernawsky began performing C.P.R. when he determined that Laura had no pulse, Laura did not regain consciousness.

Cernawsky also testified that he observed that Laura had some bruising on her forehead and had burns on her hands. Cernawsky then identified some photographs of Laura's hands and the photographs were introduced into evidence without objection. The prosecutor then asked Cernawsky if he could describe Appellant's demeanor when Appellant handed Laura to him. Appellant's counsel then objected on the ground that Cernawsky was not a psychologist who was qualified to give an opinion about Appellant's demeanor. The trial court then stated that it would reserve ruling on the objection until after it heard Cernawsky's response.[1] Cernawsky then testified that "[Appellant] walked up to the desk. I was sitting there charting, and he stood there with the child. I looked up and asked if I could help him. And he just handed me . . . the child calmly. And . . . that's when he said to me that she had fallen and was having trouble breathing."

Doctor Olayinka Onadeko testified that he had treated Laura in the emergency room on March 23, 1993. Although Doctor Onadeko and others performed C.P.R. for almost twenty-five minutes, the child did not resume breathing. When Doctor Onadeko asked Appellant about the circumstances of Laura's death, Appellant stated that Laura had fallen down some steps and had stopped breathing before they got to the hospital. Doctor Onadeko then testified that Appellant's explanation was inconsistent with Laura's injuries and her death from a head injury. Doctor Onadeko also testified that Laura had unusual second or third degree burns on her hands and he then identified the photographs that showed the burns.

_____

[1]It appears that the trial court never formally ruled on the objection.

Doctor Julia Goodin testified by video taped deposition that she had performed an autopsy on Laura and had determined that the cause of death was "multiple head trauma" that was consistent with multiple blows to the head or violent shaking. Doctor Goodin also identified the photographs of Laura's hands and testified that the burn injuries were inconsistent with Appellant's statement to the police that Laura had pulled herself up the stairs by grabbing the handrail because it would have been too painful for Laura to hold on to the handrail.

Detective Ron Carter of the Metro Police Department testified that Appellant had given a statement in which he claimed that Laura had injured herself when she fell down some stairs. Detective Carter subsequently video taped a reenactment by Appellant of how Laura allegedly climbed up some stairs by holding on to the handrail and then fell down the stairs.

Detective E.J. Bernard of the Metro Police Department testified that Appellant gave a subsequent statement in which he admitted that Laura had not fallen down the stairs. Detective Bernard also testified that Appellant had admitted that he had been angry and he had taken his anger out on Laura by shaking her very hard and throwing Laura "for a flip" four times.

Appellant testified that Laura had been climbing up some stairs when her hand slipped off the rail and she fell backwards. Appellant also testified that after Laura fell, he picked her up and ran to the hospital. Appellant testified that when he was subsequently taken to police headquarters, Detective Carter pointed a gun at his head and told him that if he "mess[ed]

up" he was going to die. Appellant testified that at this point, he decided to make up a story about how he had beaten Laura and tossed her in the air.

## II. INTRODUCTION OF PHOTOGRAPHS

Appellant contends that the trial court erred when it allowed the State to introduce the photographs of Laura's burned hands into evidence. Specifically, Appellant claims that the photographs were not relevant to any issue in the case and thus, their probative value was substantially outweighed by danger of unfair prejudice.

Initially, we note that Appellant has waived this issue by failing to object to the introduction of the photographs at trial. See State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985) (stating that the failure of a defendant to timely object to the introduction of evidence is a waiver of appellate review of the issue); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Notwithstanding the waiver, we conclude that Appellant is not entitled to relief on the merits. Rule 403 of the Tennessee Rules of Evidence states that

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Tenn. R. Evid. 403. The determination of whether to admit photographs falls within the sound discretion of the trial court and the trial court's decision will not be overturned unless there has been a clear abuse of discretion. State v. Zirkle, 901 S.W.2d 874, 888 (Tenn. Crim. App. 1995).

In this case, the photographs of Laura's burned hands have obvious relevance to the issue of whether Laura was killed by Appellant or whether she died as the result of an accident. In both his pre-trial statements to police and his testimony at trial, Appellant claimed that Laura had been injured when she fell down some stairs after she walked up the stairs while holding on to the handrail. Doctor Goodin testified that Appellant's claim was inconsistent with the burn wounds on Laura's hands. Specifically, Doctor Goodin testified that Laura would have experienced a lot of pain when she touched something and thus, she would not have held on to the handrail to pull herself up the stairs. The photographs were introduced in order to illustrate Doctor Goodin's testimony. This was a proper purpose. See State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994) (stating that trial court did not abuse its discretion when it admitted a photograph of a corpse to illustrate the testimony of a police detective). Finally, we have viewed the photographs and while they are certainly unpleasant, they are not particularly gruesome. Thus, we conclude that the probative value of the photographs was not substantially outweighed by danger of unfair prejudice. Accordingly, we hold that the trial court did not abuse its discretion when it admitted the photographs into evidence. This issue has no merit.

# III. TESTIMONY ABOUT APPELLANT'S DEMEANOR

Appellant contends that the trial court erred when it allowed Cernawsky to testify that when Appellant entered the emergency room, Appellant "calmly" handed Laura to him. Specifically, Appellant claims that this was error because Cernawsky was not an expert who was qualified to give his opinion that Appellant was calm.

At the time that Appellant was tried in November of 1995, Rule 701 of the Tennessee Rules of Evidence provided, in pertinent part:

> Generally. If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences where:
> (1) The opinions and inferences do not require a special knowledge, skill, experience, or training;
> (2) The witness cannot readily and with equal accuracy and adequacy communicate what the witness has perceived to the trier of fact without testifying in terms of opinions or inferences; and
> (3) The opinions or inferences will not mislead the trier of fact to the prejudice of the objecting party.

Tenn. R. Evid. 701(a).[2] We hold that Cernawsky's use of the word "calmly" to describe Appellant's demeanor satisfies the requirements of this rule. First, no "special knowledge, skill, experience, or training" is required to form an opinion that someone acted "calmly" because such an opinion is within the range of common experience. Second, we conclude that Cernawsky could

---

[2]In 1996, Rule 701(a) was amended to read as follows:
Generally. If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
    (1) rationally based on the perception of the witness and
    (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
Tenn. R. Evid. 701(a). Our decision would be the same under either version of the Rule.

not have as "readily and with equal accuracy and adequacy" explained his interactions with and observations of Appellant if he had not used the term "calmly." The Advisory Commission Comments to Rule 701 state that

> In situations where a witness "cannot readily and with equal accuracy and adequacy" testify without an opinion, the witness may state opinions requiring no expertise. Consequently, a lay witness may testify that a person was "drunk" or that a car was traveling "fast."

Tenn. R. Evid. 701, Advisory Commission Comments. We can see no difference between giving an opinion that someone was "drunk" or traveling "fast" and giving an opinion that someone appeared to act "calmly." Finally, we do not believe that Cernawsky's use of the word "calmly" misled the jury to the prejudice of Appellant. This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
THOMAS T. WOODALL, JUDGE